IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARL KELLEY CONSTRUCTION LLC,

        Plaintiff,

vs.                                   No. CIV 08-0379 JB/RLP

DANCO TECHNOLOGIES, f/n/a
WTNM TECHNOLOGIES, LTD.,
and JENNIFER LONG, individually
and as agent for WTNM,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant WTNM Technologies, Ltd.'s

Renewed Motion to to [sic] Dismiss or, Alternatively, for a Determination of Choice of Law of for

[sic] Claims, filed January 28, 2009 (Doc. 29).  The Court held a hearing on June 26, 2009.  The

primary issues are: (i) whether the Court should dismiss unserved Defendant Danco Technologies

from the case or require service of process; (ii) which state's law governs the claims in this case; (iii)

whether the contract between Plaintiff Carl Kelley Construction, LLC and Defendant WTNM

Technologies, Ltd. is an unenforceable adhesion contract; and (iv) whether the Court should dismiss

any of Carl Kelley's claims.  Some of the issues were resolved at the hearing when Carl Kelley

conceded some points.  Based upon these concessions, the Court will dismiss Danco from the case

without prejudice to Carl Kelley attempting to bring Danco in later, and will dismiss the express-

warranty claims.  In addition, the Court finds that Texas law governs the contract claims, while New

Mexico law governs the remaining claims.  Applying Texas law, the Court concludes that the

contract is not unenforceable.  Finally, the Court will allow the tort claims and the claim under the

New Mexico Unfair Trade Practices Act ("UPA") to proceed.

## FACTUAL BACKGROUND

In 2007, the Village of Cloudcroft, New Mexico, contacted Carl Kelley about remodeling a settling basin that was part of the village's sewage treatment plant.  See Amended Complaint ¶ 7, at 2, filed January 14, 2009 (Doc. 27).  Carl Kelley agreed to construct new chambers in the basin, and to seal the interior surfaces with an epoxy or similar impermeable lining.  See id. ¶ 8, at 3.  After researching the issue, Carl Kelley recommended Belzona, sold exclusively in the region by WTNM, as the sealing material.  See id. ¶ 9, at 3.  In July 2007, Carl Kelley purchased Belzona from WTNM. See id. ¶ 10, at 3.  Carl Kelley alleges that it made it clear that Cloudcroft wanted a twenty-year warranty and that Roger Danesi, WTNM's general partner, assured an engineer for Cloudcroft that it would provide such a warranty if the product was applied correctly.  See id. ¶¶ 13-14, at 3-4.

WTNM sent Carl Kelley a contract for the sale by a facsimile transmission instructing "please sign & return." Doc. 32-3.  Mr. Carl Kelley, the eponymous managing member of Carl Kelley Construction, asserts that he thought the contract was offered "on a take it or leave it basis and there was no opportunity to negotiates any of the 'conditions.'"  Exhibit 6 to Response, Affidavit of Carl Kelley ¶ 7, at 1 (executed March 26, 2009)(Doc. 41-4)("Kelley Aff.").  WTNM admits that the contract here was a "form/contract," but also asserts "that some of the information on the form is not pre-printed, but filled out at or around [the time] an order is placed."  Exhibit 7 to Response, Request for Admission No. 5 (Doc. 41-5).  The contract consists of an invoice, which contains shipping information and the sales price, with an attached "Terms and Conditions of Sale" that lists a series of fourteen clauses on a single page.  Contract at 1-2 (Doc. 5-2).  Two clauses from the contract are relevant here:

5)      **WARRANTIES**

All product descriptions are based on the results of laboratory tests, and the Products are warranted by WTNM to be free from defects in material and workmanship and to conform to the description on the face hereof.

Buyer shall notify WTNM of any breach of the above warranty within a reasonable time of discovery.  The liability of WTNM and the exclusive remedy of Buyer for breach of the above warranty shall be limited to the replacement of the Products or a refund of the purchase price, at WTNM's option. All OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING (WITHOUT LIMITATION) ANY WARRANTY OF MERCHANTABILITY OR OF FITNESS A [sic] PARTICULAR PURPOSE OR ANY WARRANTY AGAINST REDHIBITORY DEFECTS, ARE EXPRESSLY EXCLUDED. BUYER ACKNOWLEDGES AND ACCEPTS SUCH EXCLUSION OF WARRANTIES.  In no event shall WTNM be liable for consequential, special and/or incidental damages.  Buyer shall not represent to any third party that the warranty of WTNM is greater than as set forth herein.

\* \* \*

12)     **APPLICABLE LAW AND ARBITRATION**

This contract shall be construed, interpreted and applied in accordance with the laws of the State of Texas.

Contract ¶¶ 5, 12, at 2 (bold and capitalization in original).

According to Carl Kelley, WTNM sent Defendant Jennifer Long to supervise application of the Belzona.  See Amended Complaint ¶ 15, at 4.  Carl Kelley alleges that it followed Long's directions, but that doing so resulted in the Belzona failing to create an impermeable seal.  See id. ¶¶ 16-19, at 4.  After contacting WTNM, WTNM did not admit liability, but proposed remediation measures, which Carl Kelley maintains have proven unsuccessful.  See id. ¶¶ 20-24, at 5.

## PROCEDURAL BACKGROUND

On April 20, 2008, Carl Kelley filed its original Complaint.  See Doc. 1.  WTNM moved to dismiss the Complaint, see Doc. 5, but at the hearing on December 29, 2008, WTNM agreed to

withdraw its motion and the Court granted Carl Kelley leave to amend its original Complaint, see Clerk's Minutes at 2, filed December, 29 2009 (Doc. 26).  Carl Kelley has now filed its Amended Complaint, which pleads claims for breach of express and implied warranties, breach of contract for the warranty, declaratory relief, fraudulent and negligent misrepresentation, and violations of the UPA, and which adds Danco as a Defendant, on the belief that Danco is "the legal successor to WTNM Technologies['] obligations and liabilities."  Amended Complaint ¶ 3, at 2.

WTNM has renewed its motion to dismiss, and asks that the Court dismiss or grant summary judgment on the claims against it and, alternatively, asks for a determination of the law governing Carl Kelley's claims.  To begin its motion, WTNM asserts that neither Danco, nor any other person or entity, has assumed the obligations or liabilities of WTNM and that its counsel represents only WTNM.  See Motion at 1-2.  Next, WTNM contends that Carl Kelley's warranty claims fail because the claims rely on New Mexico law when Texas law supplies the governing law and because Carl Kelley lacks standing to bring the claims.  See id. at 4-6.  WTNM then argues that the Court should dismiss Carl Kelley's claim for declaratory judgment because, under Texas law, the contract is not one of adhesion.  See id. at 6-8.  WTNM requests that, if the Court does not dismiss the contract and warranty claims, the Court should find that Texas law governs those claims because the choice-of-law provision in the contract.  See id. at 8-10.

After discussing the contract issues, WTNM next argues that Carl Kelley's claim for fraudulent misrepresentation is a disguised contract claim and fails to meet the rigorous standards required to plead fraud.  See id. at 10-12.  WTNM contends that Carl Kelley's alternative claim for negligent misrepresentation fails to state a claim because Carl Kelley did not reasonably rely on any statements to its detriment.  See id. at 12.  WTNM requests that, if the Court does not dismiss these tort claims, it declare that New Mexico law governs those claims under the principle of *lex loci*

-4-

*delicti*.  See Motion at 12-13.  Finally, WTNM argues that Carl Kelley's claim for violation of the New Mexico UPA fails because Texas law applies to the claim and because the claim is inadequately pled regardless which law applies.  See Motion at 13-14.  WTNM asserts that the UPA claim is groundless and that it is therefore entitled to recover its attorney's fees for having to defend against the claim.  See Motion at 14-15.

In response, Carl Kelley maintains that New Mexico law governs the contract.  While acknowledging the choice-of-law provision, Carl Kelley contends that the contract is an adhesion contract and that, because it was signed in New Mexico, New Mexico law should apply.  See Plaintiff's Amended Memorandum Brief in Response to Defendant WTNM Technologies, Lt[d]'s Renewed Motion to Dismiss; Alternatively, for a Determination of Choice of Law for Claims at 4-6, filed March 28, 2009 (Doc. 41)("Response").  Carl Kelley also asserts that there are factual issues whether Danco is a successor to WTNM, and so the Court should not dismiss Danco or require separate service of Danco.  See id. at 7.  Regarding the substantive claims, Carl Kelley first argues that the circumstances surrounding the contract indicate that it is a contract of adhesion.  See id. at 8-11.  Carl Kelley next argues that it can assert the twenty-year warranty and that, to ensure the warranty was not voided, it followed the directions of Long, whom Carl Kelley contends is WTNM's agent, in applying the Belzona.  See id. at 12-17.

On the misrepresentation claims, Carl Kelley disputes WTNM's characterization of the claims as rehashed contract claims.  According to Carl Kelley, the Complaint alleges a prima-facie case of both fraudulent and negligent misrepresentation.  See Response at 18.  Lastly, Carl Kelley contends that its unfair practices claim is valid under either New Mexico or Texas law.  See id. at 19-20.

In reply, WTNM maintains that the contract blocks Carl Kelley's warranty claims.

See Defendant WTNM Technologies, Ltd.'s Reply to Plaintiff's Amended Response to WTNM's Renewed Motion to Dismiss or, Alternatively for a Determination of Choice of Law for Claims at 3, filed April 23, 2009 (Doc. 43)("Reply").  Additionally, WTNM contends that Carl Kelley strains the law in an attempt to assert standing based upon case law involving constitutional challenges. See id. at 3-5.  On the choice of law question, WTNM continues to maintain that the contractual choice-of-law provision is binding and enforceable, but agrees with Carl Kelley that New Mexico law governs the tort claims.  See Reply at 5-7.  On those tort claims, WTNM contends that the claims are too vague to stand and that it cannot be held liable for the actions of Jennifer Long, who is has not been served in this case.  See id. at 7.

Next, WTNM argues that much of the evidence that Carl Kelley submitted along with its Response are irrelevant or inadmissible.  See Reply at 7-10.  Furthermore, WTNM maintains that Danco must be served with process if Carl Kelley wants it as a Defendant in this case.  See id. at 10. In closing, WTNM contends that it cannot be liable for any intentional actions that Long took, whether Long is its employee or an independent contractor.  See id. at 10-11.

At the hearing, in response to the Court's questions, G. Holdt Garver, WTNM's counsel, clarified that his motion included materials outside the pleadings, and was for summary judgment to that extent, but that he was also challenging the pleadings themselves.  See Transcript of Hearing at 2:11-3:1 (Court & Garver)(taken June 26, 2009)("Tr.").[1]  Mr. Garver also acknowledged that he believed some of the pleading flaws were ones which could be corrected.  See id. 3:1-3 (Garver). Mr. Garver specified that he thought that summary judgment was appropriate on the twenty-year warranty issue, on whether there was an adhesion contract, and on the choice-of-law issues. See id.

_____

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

at 7:2-8:3.

J. Robert Beauvais, Carl Kelley's attorney, clarified that the claim for breach of contract was a claim for breach of an implied warranty, while the claim for breach of warranty was for breach of express warranty. See id. at 21:6-22:4 (Court & Beauvais). Mr. Beauvais then conceded that he did not think the express twenty-year warranty had been breached and that it would be better to remove that claim from the case. See id. at 22:5-23:25 (Beauvais & Court). He admitted that Carl Kelley was preceding on the theory that the product was not fit for a particular purpose and, not on the theory that the product was defective. See id. at 24:10-21 (Beauvais). Mr. Beauvais also stated that he believed it was acceptable for the Court to dismiss Danco at this time without prejudice and that Carl Kelley could do additional investigation to determine whether it wanted to bring Danco into the case. See id. at 37:12-21 (Beauvais).

During the scheduling conference on July 31, 2009, the Court asked the parties additional questions about this motion. Both WTNM and Carl Kelley agreed that the Court had enough information before it to decide whether the contract was an adhesion contract and should decide that issue. See Federal Digital Tape Recorder at 1:47:13-28 ("Your Honor, I believe that you have enough information to make a decision . . . so I am comfortable with the Court making that decision.")(Beauvais)(recorded July 31, 2009)("FTR"); id. at 1:47:55-57 ("We believe so, Your Honor.")(Garver). Seeking clarification, the Court asked whether it should decide the issue even if there might be disputed facts that would preclude a decision under the normal rule 56 standard. See id. at 1:47:29-36 (Court); id. at 1:47:57-48:14. Again, the parties agreed that the Court should decide the issue as a matter of law and not leave it for another day. See id. at 1:47:36-40 ("I would just as soon that it be decided.")(Beauvais); id. at 1:48:15-24 ("We think the . . . the information at hand is probably sufficient for the Court to do that, Your Honor.")(Garver). The Court also asked

WTNM to clarify whether it had moved to dismiss the implied warranty claim or just to determine the law governing that claim.  See id. at 1:48:40-50 (Court).  WTNM stated that it wanted the Court to determine the governing law and that, though its motion indicated it sought dismissal, WTNM had not briefed issues on that claim beyond the choice-of-law question.  See id. at 1:49:10-25 (Garver).  WTNM said it would likely address the issue in a future rule 56 motion and requested that the Court decide only what law governed the implied-warranty claim at this time.  See FTR at 1:49:35-50 (Garver).

## STANDARDS FOR MOTIONS TO DISMISS

Under rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, and view those allegations in the light most favorable to the non-moving party and draw all reasonable inferences in the plaintiff's favor.  See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  Id. at 1965 (internal

citation omitted).  "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(alterations omitted).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.  The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(internal citations omitted).

The Supreme Court has recently expounded upon the meaning of Bell Atl. Corp. v. Twombly.

> Two working principles underlie [the] decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009)(citation omitted).  Additionally, the Supreme

Court has commented:

> In keeping with these principles a court considering a motion to dismiss can choose
> to begin by identifying pleadings that, because they are no more than conclusions,
> are not entitled to the assumption of truth. While legal conclusions can provide the
> framework of a complaint, they must be supported by factual allegations.

Id. at 1950.

### LAW REGARDING RULE 9(b) OF THE FEDERAL RULES
### OF CIVIL PROCEDURE

Normally, a plaintiff need only plead "a short and plain statement of the claim showing that

the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Fraud claims, however, must meet more

stringent standards.  "In alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a

person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

With respect to rule 9(b)'s scope, a court should require parties to plead a cause of action

with particularity when that cause of action contains allegations grounded in fraud.  See 2 JAMES

WM. MOORE, JEFFREY A. PARNESS, & JERRY SMITH, MOORE'S FEDERAL PRACTICE § 9.03(1)(d), at

9-20 (3d ed. 2008).  On the other hand, claims based on negligent or innocent misrepresentation, to

the extent those claims do not require proof of fraud, may be pled in accordance with the more

relaxed standards of rule 8(a).  J. MOORE, supra § 9.03(1)(d), at 9-21; Vess v. Ciba-Geigy Corp.

USA, 317 F.3d 1097, 1104-05 (9th Cir. 2003)("Allegations of non-fraudulent conduct need satisfy

only the ordinary notice pleading standards of Rule 8(a).").

The primary motives that animate rule 9(b) help illuminate the reason for limiting the rule's

reach to claims grounded in fraud.  First, the requirement of pleading with particularity protects

defendants' reputations from the harm attendant to accusations of fraud or dishonest conduct.  See

Guidry v. Banks of LaPlace, 954 F.2d 278, 288 (5th Cir. 1992)("[The particularity requirement] stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to defendant's reputations."); United States ex rel. Harrison v. Westinghouse Savannah River Co., 353 F.3d 908, 921 (4th Cir. 2003)("Rule 9(b) protects defendants from harm to their goodwill and reputation.") (quotations and citations omitted).  Second, the requirement to plead with particularity puts defendants on notice of the allegedly fraudulent conduct so that they can formulate a defense. See United States ex rel. Harrison v. Westinghouse Savannah River Co., 353 F.3d at 921.  A related goal of 9(b) is to prevent plaintiffs from tagging on specious fraud claims to their pleadings in an attempt "to induce advantageous settlements or for other ulterior purposes."  Banker's Trust Co., v. Old Republic Insurance Co., 959 F.2d 677, 683 (7th Cir. 1992).

The United States Court of Appeals for the Tenth Circuit has fleshed out the components necessary to a successful 9(b) pleading.  In Sheldon v. Vermonty, 246 F.3d 682 (Table), 2000 WL 1774038 (10th Cir. December 4, 2000), the Tenth Circuit held that the plaintiff alleged with specific particularity a violation of the Securities Exchange Act of 1934.  See 2000 WL 1774038 at *4.  The Tenth Circuit concluded that the complaint

> adequately met Rule 9(b) requirements. First, as the district court acknowledged, the Complaint alleged misrepresentations with background information as to date, speaker, and the medium of communication. . . . Second, certain of the alleged misrepresentations involved profitable expectations arising from an unowned and inoperable meat-packing plant, a nonexistent lumber company, and fabricated contracts. Accepting Sheldon's allegations as true, these are patently false statements of present fact. The district court erred in determining they were mere conclusory allegations of falsity and in characterizing them as fraud by hindsight. . . . Third, the allegations of scienter were sufficient. In securities fraud cases, although speculation and conclusory allegations will not suffice, great specificity is not required if the plaintiff alleges enough facts to support a strong inference of fraudulent intent.

Id. at * 5 (internal quotation marks and citations omitted).  "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud."  United States ex rel.

Schwartz v. Coastal Healthcare Group, Inc., 232 F.3d 902 (Table), 2000 WL 1595976 at * 3 (10th Cir. 2000)(unpublished opinion).  "To survive a motion to dismiss, an allegation of fraud must 'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"  Midgley v. Rayrock Mines, Inc., 374 F.Supp.2d 1039, 1047 (D.N.M. 2005)(Browning, J.)(quoting Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997)).  "On the other hand, rule 9(b) does not require specific knowledge regarding the defendant's state of mind."  Midgley v. Rayrock Mines, Inc., 374 F.Supp.2d at 1047.

## STANDARDS FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the movant meets this burden, rule 56(e) requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotation marks omitted); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his

complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'")(quoting <u>Coleman v. Darden</u>, 595 F.2d 533, 536 (10th Cir. 1979)).  The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  <u>Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir. 1990).  Rule 56 provides that "an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 256.  <u>See</u> <u>Abercrombie v. City of Catoosa</u>, 896 F.2d 1228, 1231 (10th Cir. 1990).  "The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  <u>Colony Nat'l Ins. Co. v. Omer</u>, No. 07-2123, 2008 WL 2309005 at * 1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e) and <u>Argo v. Blue Cross and Blue Shield of Kan., Inc.</u>, 452 F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'"  <u>Colony Nat'l Ins. Co. v. Omer</u>, 2008 WL 2309005 at *1 (quoting <u>Conaway v. Smith</u>, 853 F.2d 789, 794 (10th Cir. 1988)).

Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 250.  The mere existence of a scintilla of evidence will not avoid summary judgment.  <u>See</u> <u>Vitkus v. Beatrice Co.</u>, 11 F.3d at 1539.  There must be sufficient evidence on which the factfinder could

reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251

(quoting Schuylkill and Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v.

Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely

colorable . . . or is not significantly probative, . . .  summary judgment may be granted."  Anderson

v. Liberty Lobby, Inc., 477 U.S. at 249 (internal citations omitted).  Where the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine

issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## NEW MEXICO LAW REGARDING CONFLICT OF LAWS

With respect to conflict-of-law issues involving contracts, New Mexico generally follows

the doctrine of *lex loci contractus* -- the law of the place of contracting controls.  See Ferrel v.

Allstate Insurance Co. ¶ 51, 144 N.M. 405, 421, 188 P.3d 1156, 1172 (2008).  Like most states,

however, New Mexico has a common exception to the rule: "New Mexico respects party autonomy;

the law to be applied to a particular dispute may be chosen by the parties through a contractual

choice-of-law provision."  Fiser v. Dell Computer Corporation ¶ 7, 144 N.M. 464, 467, 188 P.3d

1215, 1218 (2008). "[W]hen application of the law chosen by the parties offends New Mexico public

policy," however, a New Mexico court "may decline to enforce the choice-of-law provision and

apply New Mexico law instead."  Fiser v. Dell Computer Corporation ¶ 7, 144 N.M. at 467, 188

P.3d at 1218.

## ANALYSIS

Carl Kelley has pled several claims against WTNM, rooted in theories of contract and tort,

as well as a statutory claim under the UPA.  WTNM's motion to dismiss touches upon all of these

claims.  The Court will dismiss Danco from the case without prejudice and will dismiss the express-

-14-

warranty claims.  The Court also finds that Texas law governs the contract claims in this case and that the contract here is not one of adhesion, and will therefore deny in part Carl Kelley's claim for declaratory relief.  The Court will allow the remaining claims to go forward.

**I.      THE COURT WILL DISMISS DANCO FROM THE CASE WITHOUT PREJUDICE.**

WTNM's counsel state that they do not represent Danco, and that WTNM and Danco are distinct entities.  WTNM asserts that Carl Kelley must have a summons issued for Danco and serve process on Danco separate from WTNM.  The Court agrees.  Moreover, at the hearing, Mr. Beauvais agreed that it would be reasonable to dismiss Danco from the case, without prejudice, at this time. See Tr.  at 37:12-21 (Beauvais).

Carl Kelley initially contended that there is at least a genuine dispute of material fact whether Danco is a successor of WTNM.  According to Carl Kelley, the Belzona location map lists the exclusive Belzona dealer for west Texas and New Mexico as Danco.  See Response at 7.  Even if Danco were the successor to WTNM, the Court does not believe that this fact alone would relieve Carl Kelley of the need to serve Danco to make it a party to this case.

"'Generally, service on a parent, subsidiary, cosubsidiary, or affiliate of a corporate defendant is not service on the defendant.'"   Raeth v. Bank One, 2008 WL 410596 at *3 (D.Colo.)(quoting Am.Jur.2d § 255 (2007)).  The phrase "successor in interest" is somewhat unclear, in that a corporation could be a successor in interest in different ways.  A corporation would be a successor in interest by contractually acquiring all of the rights and interests of another entity, but leaving the first entity intact, ready to do another thing.  Or a corporation could become a successor in interest as a matter of law.  Without more information what Carl Kelley means by the phrase, it is unclear whether one or two entities remain.  In any case, to get the case started, Carl Kelley must sue all entities it intends to sue.  A successor in interest may require separate service

-15-

if there are two entities.  Here, there does not appear to be a dispute that there are two entities.  Thus, if Danco had assumed the rights and liabilities of WTNM, it could still be a separate entity that, like a corporate subsidiary, needs to be separately served.

On January 14, 2009, Carl Kelley filed an Amended Complaint that purported to add Danco as a Defendant.  More than 120 days have passed since that date, which means that the Court may "on its own after notice to the plaintiff . . . dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  Ordering service would normally be the better option here because Carl Kelley has not been dragging its feet but rather asserting in good faith that service is unnecessary.  Given that Carl Kelley agrees that dismissal without prejudice would be reasonable at this time, however, the Court will dismiss Danco from the case without prejudice.

On a related note, WTNM mentioned in its Reply that Long has also not been served with process.  See Reply at 7.  The Court's docket sheet indicates that summonses were issued for WTNM and for Long on April 16, 2008.  See Docket Sheet (no Doc. Number).  If Long has not been properly served, that is a matter that the Court does not have an adequate record to consider, and it will have to wait until there is either a motion for default or Long attempts some action in this case.

## II.   **THE COURT WILL FIRST DETERMINE WHAT LAW GOVERNS THE CLAIMS IN THIS CASE.**

Before turning to the merits of the various claims WTNM challenges, the Court must first decide which state's law to apply to those claims.  Arguing that the determination of the governing law must come first, Carl Kelley takes issue with WTNM's request that the Court determine the governing law as an alternative to dismissing the claims.  The Court reads WTNM's request somewhat differently -- as a request that the Court, even if it allows the claims to go forward, state

which law governs those claims.  In other words, WTNM is not asking the Court to skip over the initial step of ascertaining the law to apply, but rather asks that the Court, at a minimum, definitively rule on the choice-of-law questions in this case.  Regardless, with the governing law in dispute, the threshold issue for the Court is to delve into the choice-of-law questions.

### A.   TEXAS LAW GOVERNS THE CONTRACT CLAIMS.

Federal courts apply the choice of law rules of their forum states.  See Memorial Hosp. of Laramie County v. Healthcare Realty Trust Inc., 509 F.3d 1225, 1229 (10th Cir. 2007).  This Court, which sits in New Mexico, applies New Mexico's choice-of-law principles.  New Mexico generally follows the doctrine of *lex loci contractus* -- the law of the place of contracting controls.  See Ferrel v. Allstate Insurance Co. ¶ 51, 144 N.M. at 421, 188 P.3d at 1172.  Like most states, however, New Mexico has a common exception to the rule: "New Mexico respects party autonomy; the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision."  Fiser v. Dell Computer Corporation ¶ 7, 144 N.M. at 467, 188 P.3d at 1218.  See City of Raton v. Arkansas River Power Authority, 611 F.Supp.2d 1190, 1204 (D.N.M. 2008)(Browning, J.).  "[W]hen application of the law chosen by the parties offends New Mexico public policy," however, a New Mexico court "may decline to enforce the choice-of-law provision and apply New Mexico law instead."  Fiser v. Dell Computer Corporation ¶ 7, 144 N.M. at 467, 188 P.3d at 1218.

There is a choice-of-law provision in the contract that selects Texas law as controlling, so unless applying Texas law violates a New Mexico public policy, then Texas law governs the contract.  At one point, Carl Kelley suggests that the possibility of different outcomes under Texas as opposed to New Mexico law is sufficient "to invoke the public policy exception."  Response at 7.  If different outcomes were all that were needed to void a choice-of-law provision, then New Mexico's recognition of such clauses would be an empty gesture.  "Mere differences among state

laws should not be enough to invoke the public policy exception." Reagan v. McGee Drilling Corp. ¶ 9, 123 N.M. 68, 70, 933 P.2d 867, 869 (Ct. App. 1997). Instead, only those laws from other states that run afoul of fundamental New Mexico policy -- such as Texas' position that contractual bans on class actions for small consumer claims are enforceable -- are sufficient to preclude the enforcement of a choice-of-law clause. See Fiser v. Dell Computer Corporation ¶ 18, 144 N.M. at 469-70, 188 P.3d at 1220-21. Although Carl Kelley has argued that the contract is an adhesion contract, which the Court will discuss below, it has not offered any reasons that the substantive Texas law that would apply to its claims under the contract would be contrary to New Mexico public policy.

Carl Kelley contends that it should not be bound by the choice of Texas law because the contract is a contract of adhesion. Which state's law governs this question is not immediately obvious. On the one hand, it resembles a question about the enforceability of the contract itself and so might be thought to logically precede the choice-of-law question. On the other hand, contracts of adhesion, even under New Mexico law, are not per se unenforceable and certain provisions may be valid, while other provisions are invalid. See Guthmann v. LaVida Llena, 103 N.M. 506, 509, 709 P.2d 675, 678 (1985), overruled on other grounds by Cordova v. World Finance Corp. of NM, 146 N.M. 256, 208 P.3d 901 (2009). That application resembles the application of a body of law to the contract, which sounds like something that the choice-of-law provision should be able to influence. There is little case law on this point, but New Mexico appears to favor the latter view. In the New Mexico Court of Appeals' decision in Fiser v. Dell Computer Corp., 142 N.M. 331, 165 P.3d 328 (Ct. App. 2007), the Court of Appeals applied Texas law in determining whether a contract was a contract of adhesion because of a choice-of-law clause, and only then noted that the result was the same under New Mexico law. See id. ¶ 9, ¶¶ 33-35, 142 N.M. at 335, 340-41, 165 P.3d at 332,

337-38.  The Court of Appeals' decision in <u>Fiser v. Dell Computer Corp.</u> was later reversed on other grounds, but the Supreme Court of New Mexico's opinion reversing the Court of Appeals did not discuss or criticize the Court of Appeals' sequencing of the choice-of-law issues, so the Court of Appeals' approach remains valid.

This approach also strikes the Court as being more sensible, because whether an agreement is an adhesion contract and whether certain clauses in such a contract are unconscionable are issues that do not necessarily threaten a contract's enforceability as a whole.  Furthermore, this approach keeps the determination of the governing law as a threshold question, furthers New Mexico's respect for party autonomy, and avoids the oddity of applying different laws at different points in the analysis.[2]  Thus, the Court will treat the question whether the contract and its provisions is an adhesion contract or unconscionable as it would any other contractual question, and apply Texas law to the issue, unless that application would be contrary to New Mexico's public policy.  While this adhesion-contract question is tied to the governing law issues, it is also most directly relevant to Carl Kelley's claim for declarative relief seeking to declare the contract an adhesion contract and certain of its provisions void, so the Court will deal with that question in the context of the declaratory relief count.

---

[2] The New Mexico Court of Appeals' approach that the Court is following is not without some quirks of its own.  Here, the Court is finding the choice-of-law clause is enforceable and that Texas law thus governs the contract claims.  If the Court were to find that the contract was a contract of adhesion whose choice-of-law clause was unenforceable under Texas law, then the Court would have to invalidate the provision on which it selected the law under which it determined the clause was to be invalidated.  This circularity is perhaps intellectually dissatisfying, but such chicken-or-the-egg dilemmas are often inevitable in conflicts of laws.  Sound policy reasons, and more importantly, the approval of the New Mexico Court of Appeals, support, however, treating questions of adhesion and unconscionability as areas of law subject to a choice-of-law clause.

**B.   NEW MEXICO LAW GOVERNS THE TORT AND UNFAIR PRACTICES CLAIMS.**

It is undisputed that New Mexico law governs Carl Kelley's tort claims for fraudulent and negligent misrepresentation.  Both WTNM and Carl Kelley agree that, under New Mexico's doctrine of *lex loci delicti*, or place of the wrong, New Mexico is the location of any tort claim here and thus New Mexico law governs.  WTNM argues that the UPA claim, however, should fail because Carl Kelley must proceed under Texas' unfair practices statute, the Deceptive Trade Practices Act.

The Court believes that Carl Kelley is entitled to invoke the New Mexico UPA.  A UPA claim is more like a tort claim than a contract claim.  See Pedroza v. Lomas Auto Mall, Inc., 2009 WL 1325507 at *6 (D.N.M.)(Browning, J.).  In Kreischer v. Armijo, 118 N.M. 671, 884 P.2d 827 (Ct. App. 1994), the New Mexico Court of Appeals, in the course of affirming a trial court's dismissal of a UPA claim, observed that the plaintiff's allegations "sound[ed] in contract rather than in tort," and thus did not state a claim under the UPA.  Id. at 674, 884 P.2d at 830. Moreover, while the UPA claim may involve conduct that is also relevant to a contractual claim, a UPA claim would not be a suit on the contract but a suit under a cause of action that New Mexico's legislature has enacted for allegedly unfair trade practices.  The Court does not see how a choice-of-law provision worded the way this one is -- "[t]he contract shall be construed, interpreted and applied in accordance with the law of the State of Texas" -- could cut off Carl Kelley's right to invoke that statutory cause of action.  Finally, the policy behind the UPA is to protect New Mexico consumers, see Truong v. Allstate Insurance Co. ¶ 45, 143 N.M. 831, 844, 182 P.3d 814. 827 (Ct. App. 2008), and to prevent a plaintiff from using the UPA for an alleged harm in New Mexico would run counter to New Mexico's UPA policy.  Without a clear intent of the parties to have all claims between the parties governed by Texas law, New Mexico's usual conflicts-of-laws rules for tort claims should

apply.

### III.    **THE COURT WILL DISMISS THE EXPRESS-WARRANTY CLAIM.**

The Court will grant WTNM's motion for summary judgment on the twenty-year warranty

claims.  The express twenty-year warranty was given to the Village of Cloudcroft as the "Owner."

Warranty Number: CK1 at 1 (Doc. 32-4).  Carl Kelley appears to recognize this fact and argues that

it has third-party standing to assert the warranty.  At the hearing, however, Mr. Beauvais conceded

that he did not believe that the express warranty had been breached, because Carl Kelley was

contending that the product was not fit for a particular purpose under an implied warranty of fitness

rather than contending the product was defective more generally.  Mr. Beauvais thus agreed that the

Court should dismiss the express warranty claim.  <u>See</u> Tr. at 22:5-23:25 (Beauvais & Court).  This

dismissal would leave Carl Kelley with a claim for an implied warranty of fitness.  Because of the

nature of this claim, the issues of contract law and choice of law remain relevant.  The implied

warranty is related to the contract and the disclaimers in the contract and the parol-evidence rule or

similar doctrines might all come into play in the course of ultimately determining whether that claim

is valid.

### IV.    **THE COURT WILL DENY IN PART THE CLAIM FOR DECLARATORY RELIEF.**

Carl Kelley's Amended Complaint includes a request for declaratory relief that asks that the

Court find that it is "is not bound by the terms of the agreement to the extent it is a contract of

adhesion," and that the Court not enforce the contract's provisions for choice of Texas law and

exclusion of warranties under Texas law.  Amended Complaint ¶¶ 31-32, at 6-7.  Originally, WTNM

contended at the hearing that it believed it was entitled to summary judgment on the claim.  At the

July 31, 2009 scheduling conference, the parties informed the Court that they would like the Court

to decide this issue, even though it might involve some disputed facts or inferences that might

normally preclude a judicial decision.  See FTR at 1:47:13-48:24 (Court, Beauvais & Garver).  The

Court will therefore rule on the issue, and find that the contract is not a contract of adhesion and not

unconscionable.  Thus, the Court will deny the claim with respect to: (i) its request to find the

contract one of adhesion; (ii) its request to invalidate the choice-of-law clause; and (iii) its request

to invalidate the clause disclaiming implied warranties, to the extent that request rests on an

argument of unconscionability.  It remains an open question, however, whether the contract's

disclaimer is contrary to New Mexico's public policy.

   The basic requirements for a contract of adhesion are the same under either New Mexico or

Texas law.  Adhesion contracts are defined under Texas law as "standardized contract forms offered

to consumers of goods and services on an essentially 'take it or leave it' basis which limit the duties

and liabilities of the stronger party."  Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 355 (Tex.

1987).  Similarly, in New Mexico,

> [t]hree elements must be satisfied before an adhesion contract may be found. First,
> the agreement must occur in the form of a standardized contract prepared or adopted
> by one party for the acceptance of the other. Second, the party proffering the
> standardized contract must enjoy a superior bargaining position because the weaker
> party virtually cannot avoid doing business under the particular contract terms.
> Finally, the contract must be offered to the weaker party on a take-it-or-leave-it
> basis, without opportunity for bargaining.

Cordova v. World Finance Corp. of NM, 146 N.M. at 208, P.3d at 910 (quoting Guthmann v.

LaVida Llena, 103 N.M. at 509, 709 P.2d at 678)).  Adhesion contracts are not, however,

automatically unenforceable; they also must be unconscionable.  See Luxury Travel Source v.

American Airlines, Inc., 276 S.W.3d 154, 160 (Ct. App. Tex. 2008)("[A] contract of adhesion is not

per se unconscionable or void"); Padilla v. State Farm Mut. Auto. Ins. Co., 133 N.M. 661, 667, 68

P.3d 901, 907 n.3 (2003)(noting that contracts of adhesion or provisions therein are not invalid in

New Mexico absent a further showing of unconscionability).

The first step to determining whether an agreement is an adhesion contract is whether the contract is a standardized form.  Responding to a Request for Admission, WTNM admitted that the contract here was a "form/contract," but denied the request for admission "to the extent that some of the information on the form is not pre-printed, but filled out at or around [the time] an order is placed."  Request for Admission No. 5.  The contract in this case consists of an invoice, which contains shipping information and the sales price and which is presumably the portion of the contract filled in at the time of the order, with an attached "Terms and Conditions of Sale" that lists a series of fourteen clauses on a single page.  Contract at 1-2.  These clauses, which include the law-selection clause and warranty disclaimer that are central to this case, all appear to be unaltered, standard conditions.  Price terms and shipping information are important terms, of course, but such minor variations are present in almost any form contract as a matter of necessity.  The heart of the contract -- the various clauses relating to the parties' duties and liabilities -- are all standardized terms.  The contract is a form contract.

Another element of an adhesion contract is that the contract is slanted in the favor of a stronger party.  Carl Kelley contends that it was the weaker party and unable to avoid doing business under standardized terms because WTNM was the exclusive regional distributor of Belzona.  This argument draws the boundaries of the relevant market narrowly.  Carl Kelley may have been unable to avoid dealing with WTNM to acquire Belzona, its preferred material, but Carl Kelley may have been able to buy similar, if less desirable from its perspective, products from competitors.  See Amended Complaint ¶ 9, at 3 (describing how Carl Kelley researched options before deciding on Belzona).  Also, there is no allegation or evidence that Carl Kelley, the purchaser, attempted to negotiate any terms, and WTNM refused the request.  As Wal-Mart has shown, a purchaser, without more, does not necessarily occupy the weaker position in a contractual relationship.  Carl Kelley has

failed to show it is the weaker party.[3]

While the Court has not found any Texas cases discussing exclusivity in the context of whether a contract is one of adhesion, the New Mexico case that Carl Kelley cites in support of its position does not aid its cause.  Guthmann v. LaVida Llena recognized that "[a] party may be deemed unable to avoid doing business under the terms of a standardized form contract 'when the dominant contracting party has monopolized the relevant geographic . . . market or when all the competitors of the dominant party use essentially the same contract terms.'"  Id., 103 N.M. at 509, 709 P.2d at 678 (quoting  Albuquerque Tire Co. v. Mountain States Telephone and Telegraph Co., 102 N.M. 445, 448, 697 P.2d 128, 131 (1985))(alteration in Guthmann v. LaVida Llena).  Guthmann v. LaVida Llena rejected, however, the plaintiff's contentions of being a weaker party unable to negotiate with a retirement center because "[o]ther local facilities provided varying quarters and services under varying terms. . . . [and the plaintiff] selectively chose LVL's offering as the most desirable for her needs and wishes."  Id., 103 N.M. at 509, 709 P.2d at 678.  Carl Kelley was a company hired to perform a job for the Village of Cloudcroft.  While it may have preferred Belzona to other options, there is no allegation or evidence that it was at any significant disadvantage vis-a-vis WTNM.

The last element that the Court must consider is whether the contract was offered on a take-it-or-leave-it basis.  According to Mr. Kelley, because it was sent a form by a facsimile transmission instructing "please sign & return," Doc. 32-3, Mr. Kelley had no choice but to accept without

---

[3] Both parties have argued that the Court should decide the factual issues on the evidence before the Court.  The burden of proof, however, remains with the plaintiff.  See Albuquerque Tire Co., Inc. v. Mountain States Tel. and Tel. Co., 102 N.M. 445, 448-49, 697 P.2d 128, 131-32 (1985)(holding that party seeking to avoid contract had failed to sufficiently raise a factual issue that the contract was  a contract of adhesion).

-24-

bargaining.  Mr. Kelley asserts that he thought the contract was offered "on a take it or leave it basis

and there was no opportunity to negotiate any of the 'conditions.'" Kelley Aff. ¶ 7, at 1.  WTNM

counters that Mr. Kelley never attempted to negotiate the terms of the contract and never asked any

questions about the contract provisions.

 There is no evidence of Carl Kelley attempting to bargain over the terms of the contract;  Mr.

Kelley's affidavit indicates that he thought he had no opportunity for negotiation and so did not try

to have the terms altered.  A request to sign and return a contract does not strike the Court as being

sufficient to indicate that a contracting party has no choice but to accede to the other's terms.  And

Carl Kelley's failure to even attempt negotiations undercuts the Court's ability to find that the

contract was a take it or leave it offer.  Without any evidence that WTNM rebuffed attempts to

negotiate, told Carl Kelley that it had no choice but to sign if it wanted Belzona, or undertook some

similarly domineering measure, the Court cannot say that WTNM made an offer "without affording

[Carl Kelley] a realistic opportunity to bargain and under such conditions that" Carl Kelley could

not buy Belzona "except by acquiescing." In re Media Arts Group, Inc., 116 S.W.3d 900, 911 n.19

(Ct. App. Tex. 2003)(orig. proceeding).  If anything, New Mexico law is even clearer that, when a

party "did not express any wish to alter or negotiate the contract terms" or "object[] to" certain

provisions, then the contract is not an adhesion contract.  Guthmann v. LaVida Llena, 103 N.M. at

509, 510, 709 P.2d at 678, 679.  Again, Carl Kelley has failed to meet its burden of showing that

WTNM presented the contract on a take-it-or-leave-it basis.

 While the contract bears some of the hallmarks of an adhesion contract, and in particular is

a form contract, the Court cannot say that all the elements necessary to show adhesion are present.

Regardless whether the Court looks to Texas or to New Mexico law, this result is the same.

Moreover, the Court does not see signs of unconscionability, which must be present before the Court

can invalidate the contract or a provision of the contract, even if the contract were a contract of

adhesion.  See Cordova v. World Finance Corp. of NM, 146 N.M. at 208, P.3d at 910; Luxury

Travel Source v. American Airlines, Inc., 276 S.W.3d at 160.

When considering whether a contract is unconscionable, Texas courts ask whether the

"contract results in unfair surprise or oppression."  In re Lyon Financial Services, Inc., 257 S.W.3d

228, 233 (Tex. 2008).  "[P]arties to a contract have an obligation to protect themselves by reading

what they sign and, absent a showing of fraud, cannot excuse themselves from the consequences of

failing to meet that obligation."  Id.[4]  Carl Kelley never attempted to negotiate or object to any

language in the contract.  It is also a business, not an individual consumer, and is sophisticated

enough to be hired to do work on a sewage treatment plant for a municipality and to intelligently

select among competing options for materials to use in its work.  This fact tends to reduce what

disparity in sophistication and bargaining power might have existed between WTNM and Carl

Kelley.  Moreover, such disparities alone are not enough to show unconscionability.  See id.  The

terms of the contract take up only a single page, the contract is legible to the Court even with the

degradation in print quality from being scanned into a .pdf file for the docket, the disclaimer of

warranty includes several lines of disclaimer in all capital letters, and the terms are in relatively plain

English, without any overly convoluted legal jargon or confusing syntax.  See In re Palm Harbor

Homes, Inc., 195 S.W.3d 672, 679 (Tex. 2006)(finding no unconscionability where arbitration

provision was clearly labeled, short and specific).  The provisions of the contract themselves are

routine contract provisions.  In these circumstances, the Court does not see a sound basis for finding

---

[4] Carl Kelley has a claim for fraudulent misrepresentation, but has not raised fraud as part
of its argument for voiding any contractual provision.  Moreover, the fraudulent misrepresentation
claim, as far as the Court can tell, relates to events that occurred after the contract was signed and
so would not be a basis for finding unconscionability in the contracting itself.

the contract unconscionable. A contract might also be substantively unconscionable, i.e., the content of certain terms might be unconscionable, but given that Texas policy, like New Mexico policy, favors freedom of contract and enforcing choice-of-law provisions, substantive unconscionability is neither raised here nor is it viable. See Russ Berrie and Co., Inc. v. Gantt, 998 S.W.2d 713, 717 (Ct. App. Tex. 1999).

Applying New Mexico law would not change this result. Substantive unconscionability is not a reasonable option here for the same reason it is not available under Texas law. Moreover, the analysis of procedural unconscionability under New Mexico law is similar to the analysis under Texas law, and involves "analyzing the circumstances surrounding the contract's formation, such as whether it was an adhesive contract and the relative bargaining power of the parties." Fiser v. Dell Computer Corporation ¶ 20, 144 N.M. at 470, 188 P.3d at 1221. For the same reasons the Court does not see sufficient indicia of unconscionability under Texas law, the Court finds the same lack under New Mexico law.

In sum, the Court does not see any sound basis for finding that the contract is either a contract of adhesion or otherwise unconscionable. Though the Court is applying Texas law, the Court would reach the same result under New Mexico law. Accordingly, the Court finds that the contract, and specifically the choice-of-law provision, is enforceable and will thus continue to apply Texas law on claims involving the contract. As the parties requested, the Court will thus rule on this matter and will deny Carl Kelley's claim for declaratory relief, which asks that the Court void the choice-of-law clause and declare the contract a contract of adhesion.

This ruling leaves one portion of Carl Kelley's claim for declaratory relief, which asks the Court to void the warranty disclaimer. To the extent that the claim seeks to void the disclaimer for procedural unconscionability, the claim is denied. As the Court has concluded, there is nothing

about the circumstances of the contract indicating that it was procedurally unconscionable.

There is also nothing in Texas law that suggests a disclaimer of warranty is unconscionable, either in general or particular circumstances. Indeed, Texas' version of the Uniform Commercial Code, Tex. Bus. & C. § 1.101 to 11.108, specifically contemplates being able to disclaim warranties. See id. § 2.316. There is nothing inherently unfair about parties arguing that, after a product is sold, neither will have any obligations to the other. To eliminate the enforceability of disclaimers would eliminate the world of "as is" purchases.

Carl Kelley requests, however, that the Court also declare the waiver against New Mexico public policy. See Amended Complaint ¶ 32, at 7. Although the choice of Texas law is valid, the Court might nonetheless decline to apply Texas law on disclaiming warranties if that law contravenes a fundamental New Mexico public policy. See Fiser v. Dell Computer Corporation ¶ 18, 144 N.M. at 469-70, 188 P.3d at 1220-21. The parties have addressed the unconscionability issues, but neither side has argued whether the disclaimer is substantively contrary to New Mexico policy. In addition, WTNM has stated that it is not moving on the merits of the implied-warranty claim. The Court will thus leave the question whether the disclaimer in the contract is against New Mexico public policy for a future date.[5]

## V.   THE COURT WILL NOT RULE ON THE IMPLIED-WARRANTY CLAIM AT THIS TIME.

With Carl Kelley's concession, the only remaining warranty claim is for an implied warranty of fitness. At the status conference, WTNM clarified that the only issue related to this claim on

---

[5] The Court notes that it is skeptical that such a disclaimer would violate New Mexico's public policy. Both Texas and New Mexico allow for disclaimers of implied warranties, so long as the disclaimer is in writing and conspicuous, pursuant to identical language drawn from the Uniform Commercial Code. Compare NMSA 1978, § 55-2-316(2), with Tex. Bus. & C. § 2.316(b).

which it was moving at this time was the governing law.  With the Court's determinations that the choice-of-law provision is enforceable, Texas law governs this claim, unless, as the Court has noted, that law is against public policy.  Given WTNM's clarification, the Court will not make any further rulings about the implied warranty at present.

## VI.    THE MISREPRESENTATION CLAIMS MAY PROCEED.

As the Court has noted, it is undisputed that New Mexico law applies to Carl Kelley's tort claims.   Applying New Mexico law and rule 9(b), the Court holds that the fraudulent misrepresentation claim may have problems, but is adequately pled.    The negligent misrepresentation claim is similarly adequately pled.

With respect to both alternative claims, WTNM contends that the misrepresentation claims are repackaged contract claims.  An overlap between an established tort and a prima-facie tort claim may be reason to dismiss the prima-facie tort, which is a unique doctrine of last resort, see Healthsource, Inc. v. X-Ray Associates of New Mexico ¶¶ 35-36, 138 N.M. 70, 81, 116 P.3d 861, 872 (Ct. App. 2005),[6] but it is not a reason to dismiss standard claims relying on similar facts to other claims.  Such similarity could present grounds to not allow duplication of damages, see Hood v. Fulkerson, 102 N.M. 677, 680, 699 P.2d 608, 611 (1985)(stating that New Mexico bars double recovery and duplication of damages), but Carl Kelley is still entitled to proceed on multiple theories of liability.

---

[6] The New Mexico law on this area is unclear, however, and the Court has recently concluded that, based on the most current cases, the best option is to not submit both prima-facie tort and a similar tort claim to a jury, but not to dismiss at an earlier stage the prima-facie tort claim. See Mountain Highlands, LLC v. Hendricks, 2009 WL 1300750 at *10-11 (D.N.M.)(Browning, J.).

A.      THE    CLAIM    FOR    FRAUDULENT    MISREPRESENTATION    IS
        ADEQUATELY PLED.

To prove fraudulent misrepresentation, Carl Kelley must show: (i) a misrepresentation of

fact; (ii) either knowledge of the falsity of the representation or recklessness on the part of the party

making the misrepresentation; (iii) intent to deceive and to induce reliance on the misrepresentation;

and (iv) detrimental reliance on the misrepresentation.  See Applied Capital, Inc. v. Gibson, 558

F.Supp.2d 1189, 1200 (D.N.M.)(Browning, J.)(citing Williams v. Stewart, 137 N.M. 420, 429, 112

P.3d 281, 290 (Ct. App. 2005)).   Allegations of fraud must be pled with particularity.  See Fed. R.

Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind

may be alleged generally.").   The allegations in the Amended Complaint could be clearer but the

Court believes that they are ultimately not deficient under this standard.

From what the Court can divine from the Amended Complaint, Carl Kelley contends that

WTNM falsely informed Carl Kelley about what it needed to do to maintain a warranty.  See id. ¶

59, at 10-11.   According to Carl Kelley, it listened to Long's instructions, which resulted in

increasingly abrasive agents being used to sandblast the basin, causing damage to Carl Kelley.

See id. ¶¶ 60, 63, at 11.  The nature of the damages is not alleged in the claim itself, but presumably

is the damage caused by the alleged failure of the Belzona product, which is incorporated into the

claim.[7]  See id. ¶ 19, at 4 (discussing failure); id. ¶ 58, at 10 (incorporating previous paragraphs).

Although in the same sentence as a claim for punitive damages, Carl Kelley alleges that these the

---

[7] The practice of incorporating every previous paragraph into each successive claim, however, is not conducive to giving the notice of a claim that rule 8(a)(2) requires, see Mountain Highlands v. Hendricks, No. CIV 08-0239 JB/ACT, Memorandum Opinion and Order at 16-17, entered July 14, 2009 (Doc. 131)(Browning, J.), and is particularly troublesome with the more rigorous requirements of rule 9(b).

misrepresentation was intentional.  See id. ¶ 64, at 11.  The Amended Complaint thus alleges that

it was given false statements about what actions Carl Kelley needed to take to maintain the warranty

and that, following Long's orders to maintain the warranty in the course of preparing the basin,

excessive sandblasting led to the Belzona being unable to create a seal.  This recitation gives the

basic "who, what, when, where and how of the alleged fraud."  United States ex rel. Sikkenga v.

Regence Bluecross Blueshield of Utah, 472 F.3d 702, 727 (10th Cir. 2006)(internal quotation marks

omitted).  Notably missing from this standard list of details that newspaper reporters should follow

is the why, but intent and knowledge can be alleged generally, meaning that plaintiffs, unlike

journalists, need not explain the why -- at least not at this stage.  In keeping with this standard, Carl

Kelley has made general allegations about intent and knowledge.

      While the pleading is somewhat thin on details, the Court believes that the relevant details

and contours of the claim are sufficiently clear to comply with rule 9(b).  There are some gaps in

the story the Amended Complaint tells about the alleged fraudulent misrepresentation, such as why

WTNM or Long would deceitfully have Carl Kelley overdo the sandblasting of the basin in the first

place.  The allegations sound more like a claim of negligence or something similar, namely, that

Long did a shoddy job overseeing the preparation of the basin.  The allegations, however, have the

specificity required under rule 9(b), which is what WTNM is challenging at this time.  Compare

Midgley v. Rayrock Mines, Inc., 374 F.Supp.2d 1039, 1051 (D.N.M.)(Browning, J.)(finding that

claim that "merely speculates that fraud has occurred" without providing supporting details was

deficient under rule 9(b)).

### B.     THE COURT WILL NOT DISMISS THE CLAIM FOR FRAUDULENT MISREPRESENTATION ON THE GROUNDS THAT WTNM IS NOT LIABLE FOR LONG'S ACTIONS.

For the first time in the Reply, WTNM argues that it cannot be held liable for Long's

intentional actions, and therefore asks that the Court dismiss Count V of the Amended Complaint, for fraudulent misrepresentation, as well as any claim for punitive damages.  See Reply at 10-11. WTNM argues that it is shielded from derivative liability regardless whether Long "is an employee or an independent contractor."  Id. at 10.  While this principle might be valid, the Court cannot determine on the record before it whether that principle is applicable to the facts of this case.

It is not clear that Carl Kelley is contending that WTNM is derivatively liable because of Long's actions.  If WTNM was actively involved in the alleged fraud or was directing Long's actions, it might be liable regardless whether respondeat superior is available.  Corporations, after all, are only able to act through their agents.  See Braswell v. United States, 487 U.S. 99, 110 (1988). WTNM has not, however, put any evidence into the record about WTNM's role or, more particularly, about WTNM's role vis-a-vis Long, in the alleged fraud.  WTNM has not put into the record any evidence to support this portion of their request.  WTNM has therefore not met its initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d at 891 (10th Cir. 1991)(internal quotation marks omitted).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Moreover, because WTNM did not raise this contention in the initial motion, depriving Carl Kelley of an opportunity to respond in writing, nor did WTNM address it at the hearing, the record before the Court is incomplete and the Court is unable to say whether summary judgment should be granted in WTNM's favor.  The Court will therefore deny WTNM's motion for summary judgment or dismissal because it has failed to meet its burden of showing that there is an absence of an issue of genuine material fact.

## C.   THE NEGLIGENT MISREPRESENTATION CLAIM MAY GO FORWARD.

Negligent misrepresentation requires plaintiffs to prove similar elements as fraudulent misrepresentation, but the misrepresentation can be made negligently rather than with an intent to

deceive.  See Sims v. Craig, 96 N.M. 33, 35, 627 P.2d 875, 877 (1981).  The Amended Complaint alleges the elements of the cause of action; unlike with fraudulent misrepresentation, rule 8's notice pleading standard governs this count.  See City of Raton v. Arkansas River Power Authority, 600 F.Supp.2d 1130, 1142-44, 1153 (D.N.M. 2008)(Browning, J.).  Carl Kelley alleges that the Defendants failed to exercise reasonable care, that they thus negligently communicated the requirements to obtain a warranty to Carl Kelley, and that it relied on those statements to its detriment.  See Amended Complaint ¶¶ 67-68, at 12.  Those allegations are sufficient at this stage.

WTNM contends that the involvement of the Village in the project precludes any possible reasonable reliance.  It is not clear to the Court why this fact would preclude reliance: the allegations are about what was needed to obtain a warranty.  As the Court reads the claim, Carl Kelley is essentially alleging that is was misled about obtaining a warranty.  How the Village's involvement might have made Carl Kelley's alleged reliance on WTNM's statements regarding obtaining a warranty unreasonable is not clear.

Citing Nance v. L.J. Dolloff Associates, Inc., 138 N.M. 851, 126 P.3d 1215 (Ct. App. 2005), WTNM also argues that it needed a duty to disclose to be liable on negligent misrepresentation and apparently argues that this duty must come from a non-contractual source.  See Motion at 12.  This argument misreads New Mexico law.  Nance v. L.J. Dolloff Associates, Inc.'s discussion of duty cites R.A. Peck, Inc. v. Liberty Federal Sav. Bank, 108 N.M. 84, 766 P.2d 928 (Ct. App. 1988), which stated that a duty to disclose is needed when the misrepresentation claim is based upon omission.  See id. at 88, 766 P.2d at 932.  Carl Kelley is alleging, however, that WTNM made representations but that these representations were not true.  Additionally, to the extent that WTNM suggests that any duty cannot arise from contract, that argument is based upon a misreading of Nance v. L.J. Dolloff Associates, Inc., which held that the misrepresentation claim is a tort from the

-33-

common law and not derived from contract and thus was subject to New Mexico's general four-year

statute of limitations rather than the six-year statute of limitations for contracts.  See 138 N.M. at

855, 126 P.3d at 1219.

## VII.   THE COURT WILL ALLOW THE CLAIM UNDER NEW MEXICO'S UPA TO PROCEED IN PART.

WTNM's primary challenge to the UPA claim was that it must fail because Carl Kelley

needed to plead Texas' similar statute and not the UPA in New Mexico.  The Court has already

rejected this argument.  WTNM also, however, briefly argues that it is unclear what acts are being

alleged under the UPA count and particularly which of the seventeen acts enumerated in the statute

are being alleged.

To show a violation of the UPA, Carl Kelley must prove four elements: (i) "an 'oral or

written statement, visual description or other representation . . .' that was either false or misleading";

(ii) that "the false or misleading representation must have been 'knowingly made in connection with

the sale, lease, rental or loan of goods or services in the extension of credit or . . . collection of

debts'"; (iii) that the representation "must have occurred in the regular course of the representers[']

trade or commerce"; and (iv) that the "representation must have been of the type that 'may, tends

to or does, deceive or mislead any person.'"  Ashlock v. Sunwest Bank of Roswell, N.A., 107 N.M.

100, 101, 753 P.2d 346, 347 (1988), overruled on other grounds by Gonzales v. Surgidev Corp., 120

N.M. 133, 899 P.2d 576 (1995)(quoting N.M.S.A. 1978 § 57-12-2(D)); Pedroza v. Lomas Auto

Mall, Inc., 600 F.Supp.2d 1200, 1205 (D.N.M. 2009)(Browning, J.).[8]  Section 57-12-2(D) of the

statute notes that certain listed items are unfair trade practices, but that list is inclusive not

---

[8] Ashlock v. Sunwest Bank of Roswell, N.A. quoted N.M.S.A. 1978 57-12-2(C), which is
N.M.S.A. 1978 57-12-2(D) in the current version of the New Mexico Statutes.

exhaustive; any claim meeting the four elements described in <u>Ashlock v. Sunwest Bank of Roswell, N.A.</u> is proper under the UPA.  Carl Kelley alleges that WTNM, as a Belzona vendor and to obtain business, inaccurately misrepresented the existence of a warranty without intending to provide the warranty as agreed.  <u>See</u> Amended Complaint ¶¶ 74-78, at 12-13.  These allegations are sufficient to at least sketch out a claim under the UPA.  Part of the alleged misrepresentations, however, involve the twenty-year warranty, which Carl Kelley has conceded it does not believe was violated.  To the extent that the UPA claim relies upon representations about the twenty-year warranty, the Court dismisses the claim.  Because the Court is largely allowing the UPA claim to proceed, the UPA claim is not groundless, and the Court will not award WTNM attorney's fees under NMSA 1978 § 57-12-10C.

**IT IS ORDERED** that Defendant WTNM Technologies, Ltd.'s Renewed Motion to to [sic] Dismiss or, Alternatively, for a Determination of Choice of Law of for [sic] Claims is granted in part and denied in part as stated in this memorandum opinion and order.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

J. Robert Beauvais
J. Robert Beauvais, P.A.
Ruidoso, New Mexico

   *Attorneys for the Plaintiff*

Ilyse D. Hahs-Brooks
Ilyse D. Hahs, Attorney at Law, LLC
Albuquerque, New Mexico

-- and --

G. Holdt Garver
G. Holdt Garver Chartered
Albuquerque, New Mexico

*Attorneys for Defendant WTNM Technologies, Ltd.*